IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-CR-00145-PAB

UNITED STATES OF AMERICA

    Plaintiff,

v.

LEON ASKEW,

    Defendant.

## MOTION TO DISMISS CHARGE AS UNCONSTITUTIONAL

Defendant Leon Askew, through counsel, moves to dismiss the possession charges against him as violative of the Second Amendment to the United States Constitution. Mr. Askew also respectfully requests a hearing on this motion. *See* Fed. R. Crim. P. 12(c)(1),(d)-(f). As grounds:

### BACKGROUND

The government alleges that Mr. Askew violated 18 U.S.C. § 922(1)(g) because he is a convicted felon who possessed an unloaded firearm at Colorado Springs Airport in his carry-on luggage. Upon seeing the firearm in the x-ray machine, officers seized the bag and ordered Mr. Askew to a private security area. There, an officer opened Mr. Askew's bag, searched it, and removed the unloaded firearm and, separately, a loaded magazine. Mr. Askew allegedly admitted that he possessed the firearm for self-defense and employment, as he was currently employed as a security officer for a local bank. A subsequent search of Mr. Askew's home uncovered ammunition.

Based upon the above evidence, the government charged Mr. Askew with two counts of illegal possession of a firearm/ammunition by a prior offender under 18 U.S.C. § 922(g)(1). The government alleges that Mr. Askew's prior convictions serving as the basis for the charges allegedly include a 1991 conviction for second-degree assault,[1] a 1991 conviction for use of a controlled substance, a 2000 conviction for possession with intent to distribute a controlled substance, a 2002 conviction for escape, and a 2011 conviction for felon in possession of a firearm and possession with intent to distribute.

## **LAW & ANALYSIS**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Over the past decade, the U.S. Supreme Court has recognized the remarkable breadth of this constitutional liberty. Beginning with *D.C. v. Heller*, 554 U.S. 570 (2008), the Court ruled that there is a presumption that "the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581, 595. And although the Court suggested in dicta that firearms restrictions for prior felons might be a constitutionally valid limitation on the Second Amendment, it has not yet squarely ruled

---

[1] Second-degree assault is not a *per se* violent offense in Colorado; second-degree assault may include nonviolent acts such as spitting on a peace officer or recklessly causing injury. *See, e.g.*, § 18-3-203(1)(f.5)(1), C.R.S. It is also not a crime of violence under state law. *See id.*

2

upon that issue. *Id.* at 626–27, 627 n.26; *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (similarly declining to address constitutionality of felon in possession laws).

Last year, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated *Heller*'s "unqualified" interpretation of the right to bear arms and, on that basis, struck down New York's "discretionary" regulatory process for obtaining a concealed carry permit; the Court held that individuals need not demonstrate any "special need" before receiving a concealed carry permit under the Second Amendment. As in *Heller*, the Court again declined to address restrictions for felon firearms possession. *See id.*, 142 S. Ct. at 2157 ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.") (Alito, J., concurring).

Relevant here, the *Bruen* Court explained that firearms restrictions are now subject to a two-part constitutional analysis.

First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct," *e.g.*, firearms possession. 142 S. Ct. at 2129-30.

Second, assuming the Second Amendment is implicated by the statute, the "Constitution presumptively protects that conduct" and the government must overcome that presumption and "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130, 2133 ("[W]hether modern

3

and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry.") (citation omitted).[2] Specifically, the Government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Id.* at 2131–32 (internal quotations omitted). It is not incumbent on courts to "sift the historical materials for evidence to sustain" a firearms restriction. *Id.* at 2150. That is the government's burden, and only when the government meets this burden may a court conclude the restriction "falls outside the Second Amendment's unqualified command." *Id.* at 1230 (citation omitted).

Two weeks ago, the Fifth Circuit applied *Bruen* to strike down 18 U.S.C. § 922(g)(8), which proscribes firearms possession following a domestic violence restraining order, as facially unconstitutional. In *United States v. Rahimi*, No. 21-11001, 2023 WL 1459240, at *1 (5th Cir. Feb. 2, 2023), the defendant was arrested for unlawful possession of a firearm under 18 U.S.C. § 922(g)(8), as he had been previously restrained from such possession after allegedly assaulting his ex-girlfriend via a civil restraining order. *See id.* The Fifth Circuit held that § 922(g)(8) was unconstitutional under the Second Amendment because, under *Bruen*, the government failed to show

---

[2] *Bruen* specifically overruled its prior formulations of the government's burden as an interests-balancing test subject to "intermediate" or "strict" scrutiny. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Now, the only test is whether the government can point to a compelling historical analogue justifying the restriction. *Id.*

4

that a firearm restriction based on a civil restraining order lacked any historical precedent. *Id.* at *10.

Likewise, last month, the Third Circuit granted a defendant's motion for reconsideration of a three-judge panel's earlier decision upholding 18 U.S.C. § 922(g)(1) as valid. *See Range v. Att'y Gen. United States of Am.*, 56 F.4th 992 (3d Cir. 2023) (granting en banc rehearing of *Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022)). In this regard, the earlier panel's decision was the first to apply *Bruen* to 18 U.S.C. § 922(g)(1), but now that the panel's ruling has been vacated, a decision on the precise issue presented here is imminent. *See id.*

Other courts have similarly recognized the constitutional problems with 18 U.S.C. § 922(g) post-*Bruen*. For example, this month, an Oklahoma district court held that § 922(g)(3) was unconstitutional under the Second Amendment applying *Bruen*, noting that "our Nation's history and tradition does not support disarming a person merely because they have engaged in felonious conduct," only persistent violent prior offenders were disarmed. *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *15 (W.D. Okla. Feb. 3, 2023).

These recent applications of *Heller* and *Bruen* are bellwethers for the demise of 18 U.S.C. § 922(g)(1). The analysis in *Rahimi*, in particular, shows that the statute is unlikely to survive constitutional scrutiny, facially or as applied to Mr. Askew.

1. **The statute is facially unconstitutional.**

As noted above, the government charged Mr. Askew with two counts of unlawfully possessing a firearm and ammunition under 18 U.S.C. § 922(g)(1). The statute provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Here, under *Bruen*'s two-part test, 18 U.S.C. § 922(g)(1) facially violates the Second Amendment. *See Bruen*, 142 S. Ct. at 2129-30; *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) ("The proper framework to apply in a facial challenge is *not* to require the challenger to disprove every possible hypothetical situation in which the restriction might be validly applied, but rather to apply the appropriate constitutional test to determine whether the challenged restriction is invalid on its face (and thus incapable of any valid application).") (Emphasis added).

First, an individual's "possession of a pistol [] easily falls within the purview of the Second Amendment." *Rahimi*, at *5 (citing *Bruen*, 142 S. Ct. at 2134-35); *see also McDonald*, 561 U.S. at 780 (warning that the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees"); *United States v. Carrero*, 2022 WL 9348792, at *2 (D. Utah Oct. 4, 2022) (holding that, post-*Bruen*, felons are among "the people" referred to in the Second Amendment's text).

Thus, we proceed to step two of *Bruen*, which requires that the government prove 18 U.S.C. § 922(g)(1) has a historical analogue; the government must cite some historical disarmament measure that fell within our Framer's understanding of a valid restriction on the Second Amendment under substantially similar circumstances to the sweeping reach of 18 U.S.C. § 922(g)(1). The government cannot meet this burden for several reasons.

To begin, there is simply no historical analogue to 18 U.S.C. § 922(g)(1) because the statute applies to *nonviolent* prior offenders, whereas historical examples of disarmament laws only applied to violent offenders. In his 2020 law review article on the subject, constitutional law scholar Joseph Greenlee painstakingly reviewed historical sources to ultimately conclude that

> there is no tradition of banning peaceable citizens from possessing firearms. The historical justification the Supreme Court relied on to declare felon bans "presumptively lawful" must be the tradition of disarming violent and otherwise dangerous—not merely unvirtuous—persons. Thus, prohibitions on violent felons may be presumptively lawful under *Heller*, but prohibitions on nonviolent felons contradict the original understanding of the Second Amendment.

Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 251 (2020); *see also Harrison*, at *15 ("our Nation's history and tradition does not support disarming a person merely because they have engaged in felonious conduct").

For example, in 17th-century England, "[i]nsurrections and rebellions were constant, so disarmament was, too." Joseph G.S. Greenlee, *Avoiding Danger: Why Mere Disrespect for the Law Cannot Justify Disarmament*, Abstract (January 3, 2023),

7

*available at* https://ssrn.com/abstract= 4317000.  Nevertheless, the purpose of disarmament "was to prevent danger. Even when people were disarmed based on their religion, it was because those religious groups were perceived as subversives seeking to overthrow the government." *Id.*

Indeed, given that firearms were essential to colonists' survival, disarmament was effectively a death sentence. Thus, if disarmament was valid at all under the Second Amendment, it was permissible only when applied to *violent* offenders: "no one in 17th-century England or in America during the colonial or founding eras was ever disarmed for a nonviolent crime." *Id.* Confirming the absence of any historical analogue or tradition that justifies its breadth, 18 U.S.C. § 922(g)(1) was not created until nearly two centuries after the American Revolution and, at that time, only applied to *violent* felons. *See* Greenlee, 20 Wyo. L. Rev. at 274; *Harrison*, at *15.

For this reason alone, the government cannot satisfy its burden under *Bruen*.

Similarly, as the Fifth Circuit recognized in *Rahimi*, our nation's early disarmament laws applied to "classes of people considered to be *dangerous*, specifically including those unwilling to take an oath of allegiance, slaves, and Native Americans." *Id.* at **7-8 (emphasis added); *see also Harrison*, at *15 (recognizing same).[3] And the Fifth Circuit rightly concluded that racial classifications and treason were not analogous to the domestic violence protection order at issue in *Rahimi*.

---

[3] The Fifth Circuit did not address whether racially discriminatory disarmament laws were constitutional, though it is worth noting that 18 U.S.C. § 922(g)(1) is overwhelmingly used against minority men with nonviolent prior offenses. *See* United

The court similarly rejected the government's reliance on early "going armed" laws as a ground for upholding the statute. These laws disarmed individuals for perpetrating colonial "terrorism" against the King's subjects and "appear to have been aimed at curbing terroristic or riotous behavior, i.e., disarming those who had been adjudicated to be a threat to society generally, rather than to identified individuals." *Id.* at *9. Even so, these laws did not apply to civil retraining orders relating to an individual person. For these reasons, the government failed to meet its burden and the Fifth Circuit struck down 18 U.S.C. § 922(g)(8) as unconstitutional under the Fifth Amendment. *Id.* at *1.

Here, as implicitly recognized in *Rahimi*, to the extent the Framers viewed certain historical disarmament laws as valid exceptions to the Second Amendment, such laws uniformly applied to violent offenders, while 18 U.S.C. § 922(g)(1) indiscriminately applies to nonviolent and violent offenders alike.[4] For this reason, the government cannot carry its burden under *Bruen* and the law is facially unconstitutional. *Doe*, 667 F.3d at 1122 (holding that, in a facial constitutional challenge, defendants need not

---

States Sentencing Commission, *Quick Facts on Felon in Possession of a Firearm*, 1 (2021), *available at* https://www.ussc.gov/sites/default/files/pdf/ research-and-publications/quick-facts/Felon_In_Possession_FY21.pdf.
  To be sure, the original colonial disarmament laws were discriminatory and overbroad— and thus unconstitutional by the later-enacted Second Amendment—but such laws were always intended to prevent *danger* and, for that reason, do not provide a relevant historical analogue for restricting firearms possession by nonviolent offenders like Mr. Askew.
  [4] In fact, nearly half of all cases brought under 18 U.S.C. § 922(g)(1) involved defendants with criminal history categories between 1-3, *i.e.*, of minimal extent or severity. *See* U.S. Sentencing Commission, *supra* at 1.

prove there is no valid application of the statute, only that it sweeps so broadly as to include invalid applications on its face).

Finally, it is important to note that allowing the government to curtail defendants' rights to bear arms based on a prior conviction alone creates an exception to the Second Amendment that swallows the constitutional rule; namely, because the government has the power to define criminal conduct, it has unbridled control over our right to firearms possession. The Framers would not approve of such an interpretation, and it is plainly violative of the Second Amendment's text. Furthermore, this power was rejected in *Heller* as lacking "any true limiting principle" because

> Congress could remove "unordinary" or "irresponsible" or "non-law abiding" people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle? One easily gets the point: Neither *Heller* nor *Bruen* countenances such a malleable scope of the Second Amendment's protections; to the contrary, the Supreme Court has made clear that "the Second Amendment right is exercised individually and belongs to all Americans."

*Rahimi*, at *4 (quoting *Heller*, 554 U.S. at 581). The same logic applies here.

For these reasons, 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment and "it can no longer be constitutionally applied to anyone." *Doe v. City of Albuquerque*, 667 F.3d at 1127. If the Court agrees, it need not consider Mr. Askew's as-applied challenge and should dismiss the charges as constitutionally invalid.

**2. The law is also unconstitutional as applied to Mr. Askew.**

As noted above, in *Heller*, the Supreme Court noted "longstanding prohibitions on the possession of firearms by felons" were "presumptively lawful" and promised "to expound upon the historical justifications" for such exceptions when the opportunity arose. 554 U.S. at 626–27, 627 n.26.

In the fifteen years since *Heller*, however, the Supreme Court has yet to address the "presumptive validity" of 18 U.S.C. § 922(g)(1). Regardless, the Third Circuit has explained what Mr. Askew must show to overcome that presumption and succeed in his as-applied challenge:

> [A] challenger [must] clear two hurdles: he must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class.

*United States v. Barton*, 633 F.3d 168, 173, 174 (3d Cir. 2011).

Mr. Askew meets this burden for two overarching reasons.

First, Mr. Askew has already shown that 18 U.S.C. § 922(g)(1) is not rooted in American history or tradition because it applies to both violent *and* nonviolent offenders, and disarmament of nonviolent persons is not a part of our Nation's history or tradition. Put differently, because Mr. Askew has no prior, *per se* violent felony convictions, he would not be subject to any of the historical disarmament laws cited by the government in *Rahimi* (not otherwise based on blatant racism) and, therefore, no traditional justification for disarmament applies to him.

Second, although Mr. Askew has a prior conviction for second-degree assault, that conviction is not a *per se* violent offense, is not listed as a crime of violence in Colorado, and undisputedly applies to nonviolent conduct. *See, e.g.*, § 18-3-203(1)(f.5)(1), C.R.S. Further evidencing the nonviolent and nonserious nature of the offense, Mr. Askew was sentenced to just 90 days of in-home monitoring and four years of probation. Perhaps most compelling, that conviction was entered when Mr. Askew was just 18 years old. He is now 50 and has no other violent felony convictions during the past thirty years.

Third, even assuming *arguendo* that firearms restrictions for prior offenders has some historical underpinnings, Mr. Askew possessed the firearm for purposes of self-defense and employment. *See* Greenlee, 20 Wyo. L. Rev. at 251. There is no historical analogue for prohibiting weapons possession for self-defense and employment; to the contrary, firearms possession was inextricably related to survival at the time of our country's founding. Greenlee, 20 Wyo. L. Rev. at 261 ("The colonists depended on firearms for food, protection, trade, sport, and conquest. Thus, they soon grew contemptuous of the constricted nature of the English arms right. And the right ultimately codified in the Second Amendment of the United States Constitution reflects the broad, robust, and uniquely American tradition.") (footnotes omitted).

Accordingly, keeping fidelity to *Heller* and *Bruen*, there is no constitutionally valid reason for prohibiting Mr. Askew from possessing a firearm for self-defense and employment under the Second Amendment, even if the statute can be constitutionally applied in some circumstances. *United States v. Crow*, 2020 WL 4335004, at *2 (D.

Kan. July 28, 2020) (noting that an as-applied challenge "acknowledges a statute can be applied in a constitutional manner in some cases," but "that the statute's application to the [defendant]'s particular circumstances is unconstitutional") (citing *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011)).

## **CONCLUSION**

Ultimately, because the government cannot meet its burden under *Bruen* to prove that U.S.C. § 922(g)(1) is valid under the Second Amendment to the United States Constitution, facially or as applied to Mr. Askew, the charges against Mr. Askew must be dismissed. And as indicated above, Mr. Askew respectfully requests a hearing on this motion. *See* Fed. R. Crim. P. 12(c)(1),(d)-(f).

Dated: 2/13/2023

Respectfully submitted,

s/ *Dru Nielsen*
Dru Nielsen
Meredith O'Harris
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303.831.7364
Fax: 303.832.2628
Email: dnielsen@hmflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2023, I electronically filed the foregoing *Motion to Dismiss Charge as Unconstitutional* the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

s/ *Savanna Benninger*
Savanna Benninger
