**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 22-cr-00145-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

LEON ASKEW,

      Defendant.

---

**RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS WARRANTLESS**
**AND NONCONSENSUAL SEARCH OF MR. ASKEW'S LUGGAGE [ECF 22]**

---

The United States of America, by Cole Finegan, United States Attorney for the District of Colorado, and Albert Buchman, Assistant United States Attorney, respectfully submits the following response in opposition to the defendant's Motion to Suppress the Warrantless and Nonconsensual Search of Mr. Askew's Luggage, ECF 22. The government asserts the search that recovered the defendant's handgun and ammunition, which forms the basis of count one of the Indictment, ECF 1, was proper due to the administrative search doctrine and, in the alternative, plain view doctrine.

## FACTS

On January 31, 2022, the defendant entered the Transportation Security Administration (TSA) checkpoint at the Colorado Springs Airport. The defendant was seeking entry to the "sterile area" of the checkpoint so that he could board Frontier flight number 2823 which was scheduled to depart for Phoenix, Arizona. *See* Ex. 7 (boarding

pass).[1] The defendant placed his carry-on bag on the conveyor belt so that it could be screened by TSA's x-ray machine. The defendant entered TSA's Advanced Image Technology (AIT) machine which screened his person. The defendant exited the AIT, and a TSA Transportation Security Officer (TSO) conducted a pat-down of the defendant to resolve an alarm noted by the AIT. *See* Exs. 1 (12:17:36- 12:20) and 3 (same).

Concurrently, TSO N.K. operated TSA's x-ray machine to conduct the routine screening of all passengers', including the defendant's, carry-on luggage. He observed on the x-ray screen what appeared to be a handgun inside the bag the defendant had presented to TSA. *See* Exs. 1, 3, 4, 6 (x-ray image). Several other TSOs approached, examined the displayed x-ray image of the defendant's bag, and concurred in that assessment, Ex. 1. (12:19:35), resulting in notification of the Colorado Springs Police Department officers (local police) assigned to the airport. Ex. 4, p. 2. Section 1542.215 of Chapter 49 of the Code of Federal Regulations requires law enforcement personnel be available to respond to the TSA checkpoint in support of security issues, and Colorado

---

[1]     All exhibits have been approved by TSA as not containing Sensitive Security Information per 49 C.F.R. §§ 1520, *et. seq.* All exhibits will be conventionally filed.

Exhibit 1 is closed-circuit television camera focused directly on security lane. The defendant is wearing a green jacket and a tan hat. This footage ends at 12:22. Discovered at inv_69.

Exhibit 2 is closed-circuit television camera focused on the security line after the defendant has left the private room. This footage starts at 12:32. Discovered at inv_70.

Exhibit 3 is closed-circuit television camera focused on the entirety of the security checkpoint and covers the entirety of events. Discovered at inv_68.

Exhibit 4 is reports from TSOs N.K. and G.B. Discovered at inv_449 and inv_452.

Exhibit 5 is reports from police Officers Joachim Schmeiler and Eric Reed and two follow-up interviews with Officer Schmeiler conducted by TFO Exley. Discovered at inv_5, inv_17, inv_450, and inv_459.

Exhibit 6 is an x-ray image and photos taken by TSA. Discovered at inv_453.

Exhibit 7 is the defendant's boarding pass. Discovered at inv_456.

Springs Airport policy requires state police officers to seize firearms. During this time, the defendant waited for his bag to exit the x-ray machine. *See* Ex. 3 (12:19:35-12:25:08).

Approximately seven minutes after the bag was first examined by x-ray, Colorado Springs Police Department Officers Eric Reed and Joachim Schmeiler arrived. Exs. 1 (12:17:52, TSO N.K. radios upon observation), 3 (12:24:46-12:25:08). TSO N.K. allowed them to see the x-ray screen, where they also observed the handgun, loaded magazine, and extra magazine in the bag. *See* Ex. 5. Officer Schmeiler contacted the defendant, advising him the handgun would be seized. *Id.* The officer obtained the bag, and both officers and TSO G.B. escorted the defendant to an airport "private screening room" near the open security area at approximately 12:25 pm. *See* Exs. 3 (12:25:08-12:25:36); 4, p. 2.

Unlike for the security checkpoint lanes, there was no surveillance camera in the private room. Officer Reed confirmed the defendant's identity and contact information, and Officer Schmeiler removed the handgun containing a loaded magazine and also an extra loaded magazines from the bag. Exs. 4, p. 2; 5.

Officer Schmeiler asked why the gun was in the bag, and the defendant stated he worked for the American Eagle Security Company and forgot the gun was in his bag. *Id.*, pp. 2, 4; Ex. 4, p. 5. During the brief conversation, Officer Schmeiler advised him that no further enforcement action would be taken pending further review by TSA. Ex. 5, pp. 2, 4, 7. The defendant asked what would be required to get the weapon back, and he was told a criminal history check had to be conducted. *See* Exs. 4, 5, p. 2. The defendant was in the private room with the officers for approximately seven minutes, and the door to the room appears to have remained open during the interaction. *See* ECF 3 (the defendant

3

is escorted 12:25:11, the defendant enters the room at 12:25:28, TSO G.B. entered at 12:25:36, TSO G.B. exited carrying the bag at 12:30:41, and the defendant and local police exit at 12:30:58).

At approximately 12:30 p.m., the defendant, the officers, and TSO G.B. exited the room, with the TSO carrying the defendant's bag. *See id.* As the defendant watched, TSO G.B. then conducted an additional check of the bag in the security checkpoint area. Ex. 2. (12:23:39, from the footage TSO G.B. is unarmed). The defendant was then given back his bag, without the firearm and ammunition, and was allowed to board flight. *See* Exs. 2 (12:34:40); 4, p. 2; 5, p. 4.

Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force Officer Derek Exley later checked the defendant's criminal history and determined he was a felon. *See* Ex. 5, p. 8.

## ARGUMENT

Although the defendant only challenges local police's search of the bag, the circumstances leading up to that search are intertwined and thus the government addresses the entirety of the events. The screening of the bag by TSOs and local police's search of that bag was justified under the administrative search doctrine. Alternatively, the local police's search of the bag was independently justified under the plain view doctrine.

### i. *Seizure is justified under the administrative search doctrine.*

TSA is responsible for pre-boarding screening of all commercial aviation passengers pursuant to 49 U.S.C. § 44901(a). Federal courts have held airport security screenings, as the one here, are constitutionally reasonable administrative searches

provided that they are "no more extensive or intensive than necessary, in light of current technology, to detect the presence of weapons or explosives and that is confined in good faith to that purpose." *United States v. Aukai*, 497 F.3d 955, 962 (9th Cir. 2007); *see also* 49 C.F.R. § 1540.111(a) (prohibiting individuals from having weapons, explosives, or incendiaries on or about their person or accessible property when screening has begun). In assessing an airport screening, the Ninth Circuit has further applied a general reasonableness test: a search is reasonable if (1) no more extensive or intensive than necessary in light of current technology to discover weapons or explosives, (2) the search is confined in good faith to that purpose, and (3) passengers may avoid search by electing not to attempt entry into the sterile area of an airport. *Aukai*, 497 F.3d at 961-62. As an administrative search, TSA screening conducted pursuant to 49 U.S.C. § 44901 does not depend on consent, nor is the reasonableness of any search predicated on any theory of implied consent; "all that is required is the passenger's election to attempt entry into the secured area of an airport." *Aukai*, 497 F.3d at 960-61.

Here, the initial screening of the defendant's bag was conducted in a routine x-ray of carry-on luggage that all passengers undergo. The examination lasted for approximately eight minutes as multiple TSOs and local police examined the screen of the x-ray machine to confirm that the bag in fact contained a firearm prohibited by 49 C.F.R. § 1540.111. *See* Ex. 3 (from approximately 12:17 to 12:24). That time was not "prolonged beyond time reasonably required to rule out the presence of weapons or explosives" and was confined in good faith to the firearm witnessed. *See Aukai*, 497 F.3d at 963. Moreover, the defendant could have simply avoided the search by not choosing

to go through airport security. As such, the initial search was reasonable and valid per the administrative search exception.

Local police's witnessing the x-ray results was simply a continuation of the already active administrative search. The presence or search actions of local police does not convert an airport screening into a search that requires additional authority beyond the administrative search exception.[2] *New York v. Burger*, 482 U.S. 691, 717 (1987) ("So long as a regulatory scheme is properly administrative, it is not rendered illegal by the fact that the inspecting officer has the power to arrest individuals for violations other than those created by the scheme itself."). In *United States v. Hartwell*, 436 F.3d 174 (3rd Cir. 2006), a TSA agent searched the defendant's person after a metal detector was activated in routine screening, and then local police were called and searched the defendant again. *Id.* at 176. While both searches revealed separate packages of drugs, the Third Circuit did not parse each into individual searches; rather, the court held explicitly that both searches were one single warrantless search subject to the administrative search doctrine. *Id.* at 177-78 ("Thus, we find that [defendant] experienced a single, warrantless search, which was initiated without individualized suspicion. . . . [Defendant's] search at the airport checkpoint was justified by the administrative search doctrine."). Similarly in *Aukai*, TSA officers asked the defendant to remove items in his pocket that were triggering

---

[2]      When Congress passed the Aviation and Transportation Security Act (ATSA) (P.L. 107-71) in 2001, it envisioned the vital and flexible role that law enforcement officers would play. The federal government is responsible for pre-boarding screening of all commercial aviation passengers, and in support of the screening function, TSA is directed to ensure that armed law enforcement officers are stationed at each screening location. 49 U.S.C. § 44901(g)(1) ("[T]he [Administrator] shall order the deployment of at least 1 law enforcement officer at each airport security screening location.").

a wand alarm. 497 F.3d at 958. Local police were called and were present when TSA officers unwrapped the tissue paper covering the suspicious item and found drug paraphernalia. *Id.* The Ninth Circuit determined that the entire search, including the unwrapping of the item, was within the scope of a valid administrative search even with local law enforcement present. *Id.* at 962-963. As in *Hartwell* and *Aukai*, the local police here were present when the bag was in the x-ray and had authority to view the screen pursuant to the continuing administrative search exception.

Local police's physical search into the bag and its contents—was valid as a continuing administrative search. As demonstrated above, local police can be present for and even engage in an airport administrative search. However, for the administrative search to remain valid, the search's sole purpose must not be criminal investigation, although criminal suspicion can exist. *See United States v. Burch*, 153 F.3d 1140, 1142 (10th Cir. 1998); *United States v. McCarty*, 648 F.3d 820, 831 (9th Cir. 2011). In other words, "where an action is taken that cannot serve the administrative purpose—either because the threat necessitating the administrative search has been dismissed . . . the action clearly exceeds the scope of the permissible search." *McCarty*, 648 F.3d at 835.

Here, no probable cause was necessary to justify the x-ray inspection of the defendant's carry-on baggage or to summon law enforcement to assist with what appeared to be a prohibited firearm in that bag. Under *Aukai* and *Hartwell*, no additional particularized suspicion was required for the responding police officers to briefly assume custody of that bag and inspect it to confirm the presence of that prohibited firearm in furtherance of completing the administrative search of that bag. Once that prohibited item was addressed, here, the bag was returned to TSA for a final inspection for any other

7

prohibited items before being released to the defendant, and having completed the screening process, he was permitted to proceed to his flight. These are the hallmarks of a constitutionally permissible airport security administrative search from start to finish.

Nevertheless, even if some form of particularized suspicion was required for the responding police officers' actions, that was satisfied upon their witnessing the incriminating nature of the x-ray results for possession of a firearm in a public transportation facility under C.R.S. § 18-9-118 or attempted carrying a firearm on an aircraft under 49 U.S.C. § 46505.[3] However, the totality of the TSOs's and local police's actions show their purpose was within the scope of a search for firearms authorized by federal law regulating commercial aircraft travel, not criminal investigation. Local police did not search the defendant's criminal history or concealed carry license status and did not arrest him after seizing the firearm and ammunition. Rather, they merely advised the defendant that there may be a review but that he could board his flight.[4] Seizure of the firearm and ammunition was thus directed at neutralizing the threat the firearm and ammunition posed to security and consistent with TSA's prohibition on passengers carrying firearms into the sterile area of the airport and TSA's requirement that airport law enforcement officers support TSA's security measures.[5] Accordingly, their search was a continuation of an already initiated administrative search.

    i.   *Seizure is also justified under the plain view doctrine.*

---

[3]     State officers have authority to investigate and arrest for federal offenses. *See United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1295 (10th Cir. 1999); *United States v. Santana-Garcia*, 264 F.3d 1188, 1194 (10th Cir. 2001)

[4]     This fact is corroborated by the defendant's recorded 30-minute conversation with TFO Exley on February 10, 2022, where the defendant admits after having been provided *Miranda* warnings that "they told me it was a civil charge." *See* ECF 34-2 (Ex. 2 at approximately 25:10).

[5]     49 C.F.R. § 1542.215.

If criminal investigation had in fact occurred at the time local police seized the bag, so as to exceed the scope of an administrative search, the search was still valid under the plain view exception. "A warrantless search of a legally seized container is invalid unless it falls within one of the well-delineated exceptions to the warrant requirement" including the plain view exception. *United States v. Jackson*, 381 F.3d 984, 989 (10th Cir. 2004). "If evidence is discovered during the course of a valid administrative search, it may be seized under the 'plain view' doctrine." *Michigan v. Clifford*, 464 U.S. 287, 294 (1984). For an item to be seized in plain view, (1) the police must be legitimately in a place where the evidence could be viewed, (2) the incriminating character of the evidence must be immediately apparent, (3) officer must have lawful right of access to the object. *United States v. Benoit*, 713 F.3d 1, 10 (10th Cir. 2013); *Texas v. Brown*, 460 U.S. 730, 738-39 (1983); *see also see U.S. v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 87 (2nd Cir 2002) (police seizure of items in a closed briefcase previously opened by airport personnel upheld under the plain view doctrine).

Here, to the first prong, TSOs requested local police view the x-ray results while engaged in a valid administrative search, and the police viewed the results as a part of that administrative search. *See United States v. Wehrli*, 637 F.2d 408, 410 (5th Cir. 1981) (DEA agent present when airport screening attendant recovered cocaine in passenger's bag). Thus, they were legitimately in a place to see the evidence. To the second prong, the handgun was clearly visible by x-ray to all and its incriminating nature was apparent per C.R.S. § 18-9-118 or 49 U.S.C. § 46505. At this time, probable cause was also surely established.

To the third prong, the local officers had a lawful right to seize the gun in the defendant's bag. Law enforcement may conduct a warrantless search into a closed container "where the contents of a seized container are a foregone conclusion." *United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992). Moreover, "where the police have already seen the contents of a seized container prior to conducting the search, there is no significant additional invasion of privacy involved in searching the container." *Id.* Here, both TSOs and local police had already seen the contents of the bag in plain view on an x-ray screen, so they were allowed to access the item despite the bag's being closed. *See also United States v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994) (search of cellophane-wrapped packages valid because contents were clearly drugs to trained officer); *Jackson*, 381 F.3d at 989 (baggy's contents seized and searched since all circumstances indicated it held drugs). All three prongs are established here.

Under the plain view doctrine, in addition to the administrative search doctrine, police officers lawfully searched for and seized the defendant's handgun and ammunition.

## **CONCLUSION**

Based upon the above arguments, this Court should deny the defendant's motion.


Respectfully submitted,

COLE FINEGAN
United States Attorney


By:  *s/ Albert Buchman*
ALBERT BUCHMAN
Assistant United States Attorney
United States Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2023, I electronically filed the foregoing **RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS WARRANTLESS AND NONCONSENSUAL SEARCH OF MR. ASKEW'S LUGGAGE [ECF 22]** with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*s/ Lauren Timm*
Legal Assistant
United States Attorney's Office